UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **GARRISON REALTY, L.P.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **GARRARD CONSTRUCTION GROUP, INC.,** | § | |
| *Intervenor,* | § | |
| | § | |
| V. | § | CAUSE NO. 2:10-CV-576-JRG |
| | § | |
| **FOUSE ARCHITECTURE & INTERIORS, P.C.,** | § | |
| *Defendant.* | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Fouse Architecture & Interiors, P.C.'s ("FAI") Motion to Modify Judgment or, in the Alternative, Motion for New Trial (Dkt. No. 146) and Supplemental Motion for New Trial (Dkt. No. 147). The Court, having considered the parties submissions and the official trial transcript, hereby DENIES both motions.

**I.  Motion to Modify the Judgment**

FAI's Motion to Modify the Judgment is, despite its caption, simply a motion to reconsider. The grounds for granting a Rule 59(e) motion to reconsider include: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice. *In re Benjamin Moore & Co.,* 318 F.3d 626, 629 (5th Cir. 2002). Defendant filed its Motion to Modify the Judgment (Dkt. No. 146) pursuant to Federal Rule of Civil Procedure 59, requesting that this Court modify the Judgment previously entered in this case (Dkt. No. 140) asserting errors of law and prevention of injustice. FAI does not claim a change in the law or the availability of new evidence.

1

"Motions for reconsideration serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Texas Instruments, Inc. v. Hyundai Elecs. Indus. Co. Ltd.,* 50 F. Supp. 2d 619, 621 (E.D. Tex. 1999). Moreover, a motion for reconsideration "should not be used to raise arguments that could, and should, have been made before the entry of judgment … [or] to re-urge matters that have already been advanced by a party." *Lupo v. Wyeth-Ayerst Labs.*, F. Supp. 2d 642, 645 (E.D. Tex. 1997) (citing *In re Liljenerg Enter.*, No. CV-A-97-0456, 1997 WL 222497, at *2, *3 (E.D. La. May 1, 1997).

Prior to entry of judgment, FAI filed its Motion to Enter Settlement Agreement (Dkt. No. 127) and Motion to Compel Election of Remedies (Dkt. No. 138), urging a reduction in the amount of damages awarded by the jury because of the settlement amount received by Intervenor Garrard Construction Group ("Garrard") from Plaintiff Garrison Realty, L.P. ("Garrison") prior to trial, and urging that Garrard be required to elect between damages received for negligence and negligent misrepresentation. The Court fully considered and acted on these matters as part of entering its Final Judgment. Specifically, the Court reduced the amount of the jury's damage award as set forth in their verdict by the settlement amount received by Garrard from Garrison, but the Court awarded damages for both negligence and negligent misrepresentation. The Court has heard and decided Defendant's arguments regarding Garrard's status as a settling tortfeasor (as well as FAI's arguments regarding limitations) at least twice. There are no new grounds to reconsider the same issues yet again. Garrard's Response accurately addresses this by observing that Defendant "beats the proverbial 'dead horse' by presenting these arguments yet again to the Court." Dkt. No. 148 at 1. The Motion to Alter the Judgment is hereby DENIED.

## II. Motion for New Trial

FAI bases its request for a new trial upon two primary arguments: (1) that the verdict is based on insufficient evidence, and (2) that the Court committed errors. When a motion for new trial is based on insufficiency of the evidence, the motion should only be granted if the verdict is against the great weight of the evidence or it is quite clear that the jury has reached a seriously erroneous result. *See International Ins. V. RSR Corp.,* 426 F.3d 281, 300 (5th Cir. 2005). When a motion for new trial is based upon errors committed during the trial, the standard requires the movant to prove that the erroneous rulings complained of substantially prejudiced the movant. *See Cruthirds v. RCI,* 624 F.2d 632, 635 (5th Cir. 1980). The trial record clearly establishes that FAI does not meet either burden. The Court addresses each of FAI's contentions below.

### a. *Liability Verdict Against Great Weight of Evidence*

FAI first argues that Garrard introduced no expert testimony to identify breach of an architect's professional duty of care. This is incorrect. Garrard introduced testimony from an expert, Mr. Steve Fitzpatrick, having a Master's Degree in architecture and 28 years of professional experience in the field, who testified at length as to the professional standard required of an architect and what would constitute a breach of that standard. *See* Official Transcript, Dkt. No. 144 at 30-33. Mr. Fitzpatrick specifically identified certain behavior of FAI that would constitute a breach of an architect's professional duty of care. *Id.* FAI may not like the jury's decision, but it had ample evidence from which to reach such a conclusion. FAI's motion for a new trial on this ground is DENIED.

### b. *Damages Verdict Against Great Weight of Evidence*

FAI next argues that Garrard introduced no admissible evidence of actual damages or lost profits. Again, this is incorrect. Garrard provided testimony from its corporate representative

regarding the company's actual damages and lost profits. *See, e.g.,* Official Transcript, Dkt. No. 144 at 59-75, 81-85, and 100 ("*Question*: So what do you think if you add all of that up, what amount of money did Garrard end up losing? *Answer*: A little under $675,000.") On this basis alone, FAI's assertion regarding insufficiency of the evidence regarding damages fails.

Further, the Court admitted Exhibits 2-A and 3, which are also evidence of amounts lost by Garrard. *Id.* at 59-75 and 81-85. Both exhibits were properly admitted pursuant to the business records exception to hearsay. Fed. R. Civ. P. 803(6). This additionally confirms that Garrard provided sufficient evidence of actual damages and lost profits upon which the jury could rely upon to calculate its damages award. FAI's motion for a new trial on this ground is DENIED.

    c. Error in Admitting Exhibits 2-A and 3

FAI argues (1) that the Court impermissibly allowed Garrard to introduce two exhibits over hearsay objections and (2) alleges that the Court engaged in *ex parte* communications with Garrard's counsel regarding those exhibits. The Court takes this allegation of an inappropriate *ex parte* communication most seriously. As such, this warrants a detailed discussion of the underlying facts and circumstances.

        i. <u>Factual Background Related to Allegations of *Ex Parte* Communication</u>

On January 17, 2012, the Magistrate Judge Roy S. Payne held the evidentiary hearing in this case during which counsel for FAI and Garrard argued for the pre-admission of various exhibits. Responding to FAI's objection, Garrard's counsel indicated to Judge Payne that Exhibit 2 included – in part – a summary of business documents that was prepared in anticipation of this litigation. In light of this admission, Judge Payne ordered those portions of the document prepared in anticipation of litigation be redacted. Following the hearing, each of Judge Payne's

4

rulings was memorialized in a minute entry on the docket. Dkt. No. 112 ("Intervenor is to re-submit Exhibit 2 without "approved," "pending" and "rejected" columns. Only "amount" column may be displayed.")

On the morning of February 6, 2012, approximately one hour before jury selection was set to begin, the undersigned's law clerk approached attorneys for both parties to collect courtesy copies of their exhibit binders, which the Court previously instructed the parties to provide on the first day of trial. *See* Dkt. No. 106 ("On the first day of trial, each party is required to have on hand … One (1) copy of their respective original exhibits. Each exhibit shall be properly labeled with the following information: Identified as either Plaintiff's or Defendant's Exhibit, the Exhibit Number and the Case Number.") When Garrard's counsel handed the law clerk his exhibit binder, he indicated that it included Exhibits labeled 2 and 2-A. To explain the additional exhibit (2-A), Garrard's counsel expressed his intention to re-urge the admission of the un-redacted version of Exhibit 2 (now identified as Exhibit 2-A) in light of new information he had learned between the time of the evidentiary hearing before the Magistrate and the start of *voir dire*. The law clerk simply responded to Garrard's counsel that he would make the Court aware of his intention to re-urge Exhibit 2-A.

Shortly thereafter, the Court conducted an on-the-record pre-trial conference in chambers with counsel for both parties present, during which several "housekeeping" matters were addressed:

> **The Court**: Good morning. Why don't you two counsel have a seat up here, and everybody else can find a chair wherever it's convenient. Is this everybody we have got?
>
> **Mr. Skelton**: Yes, sir.
>
> **Mr. Singhe**: Yes, sir.
>
> **The Court**: All right. As everybody knows we're here on 2:10-cv-576, the Garrison Realty case. This is about seven or eight minutes until 9:00, we have

> got to select a jury starting at 9:00 o'clock, so I'm going to make this brief. We have a few housekeeping matters that need to be taken up.
>
> First of all, for purposes of clarification, the exhibits and other matters that Judge Payne has ruled on previously, I am going to deem them to be preadmitted, you do not need to reurge them during the trial. Okay? We clear on that?
>
> Secondly, I carried three Motions in Limine earlier and I believe those are Defendant's 14, 15 and 33, and they were mentioned as carried in Document 115. All three of those are denied.
>
> And then next I understand that Mr. Skelton may want to reurge an issue regarding an exhibit or a chart.
>
> **Mr. Skelton**: Yes, sir. With regard to Exhibit [2]…

*See* Official Transcript, Dkt. No. 143 at 2-3. FAI's counsel then re-urged Exhibit 2-A (although mistakenly referring to it as Exhibit 3) on the grounds that he inadvertently represented to Judge Payne that Exhibit 2-A was prepared in anticipation of litigation, when in fact it was a document that was kept in the ordinary course of business. *Id.* at 3-5. The Court heard arguments from both parties on the issue, before ruling that "[b]ased on your representation on the record and to the Court, I'm going to allow you to offer it without the redactions, if you can prove it up as a business record, I will admit it. If you can't, I won't." *Id.* at 5. Later, during the trial, Garrard's counsel questioned a witness and laid the appropriate foundation to have the Exhibit admitted as a business record, and it was admitted. Official Transcript, Dkt. No. 144 at 56-59.

    ii.   <u>There was no *ex parte* communication</u>

The above scenario is the sole basis upon which FAI alleges that an improper *ex parte* communication occurred and which FAI contends requires a new trial. This Court takes FAI's allegation very seriously. The Court understands, full well, that it should not communicate *ex parte* about the merits of a pending suit other than in an emergency or relating to purely administrative matters. *Drobny v. Commissioner,* 113 F.3d 670, 680-81 (7th Cir. 1997). As described above, nothing related to the Court's communications with either party may be remotely classified as *ex parte*. The undersigned's law clerk communicated with counsel only to

retrieve Garrard's exhibit binder. Upon such receipt, Garrard's counsel explained the addition of an exhibit, of which the Court was not previously aware. The existence of this new exhibit in the binder was passed onto the Judge from the law clerk. The Court never addressed the merits of the exhibit except on the record in Chambers and with counsel for both parties present, as cited above. This is the quintessential instance of a purely administrative discussion. The short communication between Plaintiff's counsel and the law clerk and the law clerk then calling such to the Court's attention cannot possibly be classified as an improper *ex parte* communication. The Court clearly did not engage in any communication that can reasonably be classified as an improper *ex parte* communication.

### iii. Reasonable Notice

FAI contends that "the Court erred by considering such request [as to un-redacted Exhibit 2-A] and setting it for hearing. The Court also erred by conducting a rehearing without reasonable notice to Defendant." Dkt. No. 146 at 20. According to FAI, "Garrard should have filed a written motion for reconsideration of Magistrate's [sic] ruling, giving Defendant fourteen days to respond before the Court could view the matter as submitted for decision." *Id* (citing Local Rule CV-7(e).[1]

Apparently, FAI contends that this portion of the local rule entitles it to fourteen days to file a written response to Gerrard's oral re-urging of this exhibit, and that the Court failure to follow this protocol "deprived Defendant of notice and due process on this critical evidentiary ruling." Dkt. No. 146 at 20. However, FAI conspicuously fails to mention that the <u>first line</u> of Local Rule 7 states that "[a]ll motions, <u>unless made during a hearing or trial,</u> shall be in writing

---

[1] The portion of the Local Rules relied upon by FAI recites: (e) Time to File Response. A party opposing a motion has fourteen days from the date the motion was served in which to file a response and any supporting documents, after which the court will consider the submitted motion for decision. *See* LOCAL RULE CV-6 (three days added to the prescribed period). Any party may separately move for an order of this court lengthening or shortening the period within which a response may be filed. *See* L.R. CV-7(e).

…" L.R. CV-7(a) (emphasis added). FAI misapplies the fourteen-day response provision that applies to written motions. This provision of the Court's local rules was clearly not intended to apply in this situation.

Nothing in Local Rule 7 supports Defendant's contention that it is required to receive written notice fourteen days before an evidentiary matter related to a trial exhibit may be considered by the Court. On the morning of trial, and based on newly discovered evidence, Garrard's counsel expressed his intention to make an oral motion regarding an evidentiary issue. This was, as contemplated by the rule, <u>during trial.</u> Certainly the local rules do not provide for a fourteen-day response time for every motion made at trial. If so, any party could effectively veto the Court's trial schedule; when as here, a jury panel had reported and was present for *voir dire*. Because CV-7(e) is not applicable in this context, FAI's motion for a new trial on the grounds of improper notice of a "hearing" with regard to Exhibit 2-A is DENIED.

### iv. The Admission of Exhibit 3

As to Exhibit 3, the Court determined that an error in the amended minutes from the Magistrate's evidentiary hearing had occurred, and that Judge Payne intended to admit Exhibit 3 after it was proven up as a business record during trial. *Id.* at 75, 77-78. Further, the Court determined that because Exhibit 2-A was admitted over similar objections, Exhibit 3 should be admitted, after it was shown to fall within the business records exception to the hearsay rule. *Id.* Although FAI argued that the charts in question were inadmissible as summaries of documents not admissible, the Court admitted such charts after determining that FAI made no effort to compel production of the documents underlying the charts themselves. Official Transcript, Dkt. No. 145 at 2-4.

Because the Court finds no error in its communications with the parties or with its admission of Exhibits 2-A and 3, the motion for a new trial on these grounds is DENIED.

### d. *Unfair Limitations on Defendant's Rebuttal Damages Expert*

FAI argues that the Court made erroneous evidentiary rulings by improperly and unfairly limiting the testimony of FAI's expert. FAI intended to call Mr. Berry Bell to testify regarding the alleged insufficiency of Garrard's damages evidence. Official Transcript, Dkt. No. 145 at 24 ("And I think Mr. Bell is entitled as someone who knows what good evidence looks like…"). The Court sustained an objection to such testimony as calling for legal conclusions but nonetheless allowed Mr. Bell to testify regarding the reliability of Exhibits 2-A and 3 as indications of Garrard's damages. *Id.* at 6-7, 26-27, 28-31, and 35-37. Further, FAI attempted to solicit testimony from Mr. Bell regarding fraud, to which an objection by Garrard was sustained because the expert's opinions on fraud were not contained within his expert report. *Id.* at 10-11. The Court excluded Mr. Bell's testimony as to legal conclusions and prohibited him from giving opinions before the jury that went beyond his expert report. This was appropriate and does not support the granting of a new trial. Accordingly, the motion is DENIED as to this point.

### e. *Material, Prejudicial Error in Jury Charge*

FAI further argues that the Court erroneously charged the jury by failing to instruct the jury as to the proper standard of care applicable to professional architects. The Court included in its charge the instruction for "Standard of Care for Architects," <u>as proposed by FAI</u>. This was included in both the Court's final instructions to the jury along with all the other definitions given in the case. Official Transcript, Dkt. No. 145 at 138-140. Further, these same instructions were read to the jury before the parties' presented closing arguments. The written charge containing the instruction as requested by FAI was taken into the jury room when the jury retired

9

to deliberate. Having employed FAI's own instruction, the Court finds no basis for granting FAI's Motion for New Trial as to this point, and it is DENIED in this regard.

### f. Improper Intervention

FAI, for the first time, <u>after the trial and resulting verdict</u>, now argues that Garrard improperly intervened in this action. Since this argument was not raised at any time before the instant motion, FAI has clearly waived and abandoned this issue. Accordingly, the motion is DENIED as to this point.

### g. Unfair Treatment of Defense Counsel

Finally, FAI argues that this Court was "unfair" to FAI by exhibiting "biased treatment and antipathy" toward defense counsel in the presence of the jury. One need only read the trial transcript to readily see that this assertion is false and without any basis or support. Notably, FAI's argument is not supported by any specific reference or citation to the transcript. In fact, all of FAI's citations and footnotes to evidence such "biased" treatment refer only to "See Trial Transcript." *See, e.g.,* Dkt. No. 146 at 26, n. 125. Despite having access to the entire transcript while preparing this motion, FAI fails to point to one specific instance to support this allegation. This is akin to being asked for directions by a traveler in Texas and responding "see map of the United States."

For example, FAI argues that "the Court repeatedly allowed Intervenor's counsel to lead its witnesses…," while not citing one single incident of such in the record. Defendant's footnote stating only to "See Trial Transcript" provides this Court absolutely nothing to consider. Such makes it obvious that FAI is unable to identify any specific instances to support its broad-brush claim of unfair treatment.

As an aside, this Court finds it bizarre that FAI complains of Garrard leading its witnesses when FAI fails to mention its counsel's incessant leading of witnesses throughout the first day of trial. Official Transcript, Dkt. No. 143 at 227, 256, 258, 275-278. Outside the presence of the jury and after repeated admonishments to avoid leading, this Court warned Defendant's counsel that if he continued to lead witnesses, he would be sanctioned for such conduct. *Id.* at 275-278. Upon further leading of the witness, the Court sanctioned FAI's counsel for such conduct. *Id.* at 286-288. In fact, the Court pointed specifically to a number of leading questions that FAI's counsel proposed following the warning that sanctions would follow another leading question as follows: "…[y]ou have a contract with the owner, don't you? You don't have a contract with the contractor, do you? If that is not a leading question, I don't know what a leading question is." *Id.* at 286. On the second day of trial, the Court was indeed surprised by Defendant's objections as to Intervenor's leading of a witness. While still instructing Intervenor's counsel to "refrain from leading," the Court relayed to Defendant's counsel that "[g]iven the latitude that the Defendant's enjoyed," some leading would be allowed "to be fair to both sides." Official Transcript, Dkt. No. 144 at 99. The Court fails to see how some limited latitude afforded to Intervenor is unfair and biased in this context, especially following conduct by Defendant's counsel that was so egregious that the Court found sanctions to be unavoidable. The omission of this reference from FAI's Motions, while it seeks a new trial on the same basis, speaks volumes in this Court's view.

Defendant further argues that the Court admonished Defendant's counsel in the presence of the jury. This is not correct. Again, Defendant fails to provide any specific cite to the transcript to support such a contention. As shown above, the Court was careful to admonish FAI's counsel only outside the presence of the jury. Official Transcript, Dkt. No. 143 at 275-

278. Specifically, the Court stated that "[w]e're having this discussion outside of the jury. I am giving you the benefit of the doubt, but your benefit of the doubt is over as of right now." *Id.* at 277. Conversely, the Defendant's counsel came precariously close to showing disrespect for the Court as the Court overruled its objections. Official Transcript, Dkt. No. 144 at 79. (With the jury absent: "…I want to caution you, Mr. Singhe, several times I have overruled your objections and there have been expressions from you as you sat down. You are not going to comment on the rulings of my (sic) objections in front of the jury. That shows disrespect for the Court.") Further, Defendant's counsel engaged in several unpermitted side-bar comments to witnesses' answers on cross-examination. Official Transcript, Dkt. No. 143 at 276.

Finally, Defendant states that the alleged unfair treatment by the Court created the impression in the jury's minds that the Defendant and its counsel were lacking credibility. Dkt. No. 146 at 27. Defendant states that, based upon an "informal polling of the jury after trial," that several jury members stated that the Court's "disdain for defense counsel" impacted their view of the case to Defendant's detriment. Again, Defendant provides no support for such a contention. This serves as yet another example of Defendant's naked assertions of disparate treatment. Despite FAI's statement as to alleged comments by members of the jury, no affidavit from any juror was submitted by FAI with its Motion to support this serious charge.

Unfortunately, Defendant's counsel conducted himself during trial in a manner which appropriately deserved admonishment from the Court. However, never was Defendant's counsel admonished or warned in the presence of the jury. Tellingly and consistently, FAI offers no support for this claim from the transcript. The pending motion before the Court can only be characterized as nothing less than a series of broad-brush accusations which uniformly fail to supply any valid support from the record.

Based on the foregoing, the Court finds Defendant's allegations of unfair treatment and bias to be completely unfounded. Accordingly, the Court DENIES the motion as to this point.

### III.  Conclusion

The Court finds no basis pursuant to Federal Rule of Civil Procedure 59 to reconsider and modify the Final Judgment entered in this case. Similarly, the Court finds no basis warranting a new trial in this case. The various claims presented in this motion are uniformly unfounded, both factually and legally. Accordingly, the Court in all respects DENIES Defendant's Motion to Modify the Judgment and DENIES Defendant's Motion for New Trial.

**So ORDERED and SIGNED this 7th day of June, 2012.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE